UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,                                                                Plaintiff,

v.                                                                Criminal Action No. 3:15-cr-101-DJH

RALPH W. GOODWIN, et al.,                                                                Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

After a hearing, United States Magistrate Judge Dave Whalin decided to detain Defendant Ralph W. Goodwin prior to trial and remanded him to the United States Marshals Service. (Docket No. 17, PageID # 104-05) Goodwin now asks the Court, pursuant to 18 U.S.C. § 3145(b), to conduct its own detention hearing and revoke the detention order. (D.N. 21) The United States opposes his request. (D.N. 31) The Court has read the detention hearing transcript (D.N. 17), examined briefings from both sides, and considered the issues *de novo*. After careful consideration, the Court agrees with the decision to detain Goodwin and will deny his motion.

I.   FACTUAL BACKGROUND

At the pretrial detention hearing before the Magistrate Judge, the United States and Ralph Goodwin presented testimony on the facts and allegations described below. Because Goodwin's motion for revocation raised no new facts, the Court makes no additional factual findings. Thus, the factual bases of the Court's *de novo* review are derived entirely from the detention hearing transcript.

In August 2015, a woman in Louisville, Kentucky reported that her fifteen-year-old daughter, Jane Doe, was missing. (D.N. 31, PageID # 148) Four days later, the Montgomery County Sheriff's Department found Jane Doe at Ralph Goodwin's residence in Clarksville,

1

Tennessee. (*Id.*) Goodwin had met a woman named Crystal online and paid her for sex. (*Id.*) Crystal also offered to find Goodwin another woman to have sex with. (*Id.*) Crystal met Jane Doe in a park, and she took Jane Doe to a hotel so that Jane Doe could have sex with Goodwin for money. (*Id.*) Goodwin traveled from Tennessee to Louisville to meet Crystal and Jane Doe at the hotel. (*Id.*)

When she was found in Tennessee, Jane Doe told the police that she engaged in sexual relations with Goodwin, and she said that Goodwin gave Crystal $700 after he and Jane Doe had intercourse. (D.N. 31, PageID # 149) The day they met in Louisville, Goodwin text messaged a friend—the message indicated both that Goodwin had engaged in sexual acts with Jane Doe and that he knew she was a minor. (D.N. 17, PageID # 51) He then took Jane Doe to his home in Tennessee. (D.N. 31, PageID # 149) Jane Doe waited until Goodwin was inattentive so she could use his computer to tell a friend that she was being kept in Tennessee. (D.N. 17, PageID # 9) That friend alerted Jane Doe's mother. (*Id.*) Police arrested Goodwin and returned Jane Doe to her home in Louisville.

Other allegations of sexual misconduct have developed. After Goodwin's arrest in Tennessee, two relatives filed a complaint with the Vanderburgh, Indiana Sheriff's Department accusing him of sexual molestation. (D.N. 31, PageID # 149) The relatives—girls aged sixteen and nine—allege that Goodwin touched them inappropriately, that he propositioned the elder girl for sex, and that he showed the younger girl pornographic material. (D.N. 17, PageID # 15, 53-54; D.N. 31, PageID # 149)

The Magistrate Judge conducted a combined preliminary and detention hearing in September 2015. (D.N. 17) Goodwin was charged with sex trafficking a minor, in violation of 18 U.S.C. § 1591. The offense charged created a rebuttable presumption in favor of detention.

2

18 U.S.C. 3142(e)(3)(D), (E).  The Magistrate Judge concluded that the United States had shown by clear and convincing evidence that no conditions could guarantee the safety of the community if Goodwin were released.  (D.N. 31, PageID # 150)  The next day, the grand jury returned a one-count indictment against Goodwin.  (*Id*.)  The indictment charged that Goodwin and his co-defendant, Crystal Bradshaw, had sex-trafficked a minor.  (*Id*.)  Goodwin then moved to revoke the detention order.  (D.N. 21)

Excluding his arrest and the accusations in Indiana, Goodwin has no known prior criminal history.  (D.N. 31, PageID # 149)  He enlisted in the military at 18 and made a career of it.  (D.N. 17, PageID # 39)  While serving in Vietnam, Goodwin was exposed to Agent Orange.  (*Id*., PageID # 40)  The Agent Orange exposure left him disabled.  (*See id*.)  After an honorable discharge, Goodwin opened his own electrician business in Newburgh, Indiana then shuttered the business when he was hired to be an electrician at Fort Campbell.  (D.N. 17, PageID # 39)  He worked at Fort Campbell until retirement.  (*Id*.)  Goodwin suffers from several medical ailments.  (*Id*.)  He has resided in Tennessee for thirteen years, and he has strong ties to Evansville, Indiana.  (D.N. 17, PageID # 59-60)  Goodwin is the eldest of three brothers.  (*See id*., Page ID # 38)  His brother, Mark, resides in Chandler, a suburb of Evansville.  (*Id*.)  His other brother, John, works limited hours and lives with their mother, Cecile, in Evansville.  (D.N. 21, PageID # 113)  Goodwin asks this Court to release him to live with Cecile and John in Evansville.  (*Id*.)  The family is willing to waive their Fourth Amendment rights and protections.  (*Id*., PageID # 114)  Goodwin says he will leave the home only for medical and court releases.  (*Id*.)  He is also willing to wear a GPS monitoring device.  (*Id*.)  But the Goodwin residence in Evansville is only ten miles away from where the relatives who have accused him of sexual molestation reside.  (D.N. 17, PageID # 100)

## II.     STANDARD

When a magistrate judge orders petrial detention, the detainee "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). The Sixth Circuit has not adopted a specific standard of review. But sister courts have used the *de novo* standard. *See, e.g., United States v. Watkins*, No. 13-02-KSF, 2013 WL 614252 (E.D. Ky. Feb. 19, 2013). Sister courts have also chosen not to hold new hearings when the moving party asked for revocation based on the same evidence presented to the magistrate judge. *See United States v. McGowan*, No. 5:13-123, 2013 WL 5743912, at *1 (E.D. Ky. Oct. 23, 2013). Goodwin presented no new evidence in his motion, (*see* D.N. 21), so the Court will review the transcript from the September hearing.

As for detention, the Court must ask whether a "condition or combination of conditions will reasonably assure the appearance of [Goodwin] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). If not, the Court must uphold his detention. *See id.* As Goodwin has been charged with an offense "involving a minor victim" under 18 U.S.C. § 1591, there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of [Goodwin] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E). If Goodwin overcomes the presumption, the United States must prove, by clear and convincing evidence, that no conditions will reasonably assure Goodwin's appearance or the safety of the community. 18 U.S.C. § 3142(f)(2)(B). The Court must consider several factors, including the nature of the crime charged and the weight of the evidence against Goodwin. 18 U.S.C. § 3142(g).

### III. DISCUSSION

The United States has shown with clear and convincing evidence that the safety of the community cannot be reasonably assured if Goodwin is released. Because Goodwin was charged with sex-trafficking a minor, the Court presumes that he should be detained. *See* 18 U.S.C. § 3142(e)(3)(E). This presumption "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (internal citations and quotations omitted). Even if Goodwin rebutted the presumption, which the United States concedes, (D.N. 17, PageID # 58)[1], the factors from 18 U.S.C. § 3142(g) support detaining him. The Court will address each factor in turn.

First, the nature and circumstances of the charge favor detaining Goodwin. Indeed, the statute specifically instructs the Court to consider whether the charge is for a "violation of section 1591" and whether the charge "involves a minor victim." 18 U.S.C. § 3142(g)(1). Of course, Goodwin was charged under that particular section for allegedly sex-trafficking a minor. By specifically enumerating the type of violation alleged here, the statute suggests that Goodwin's alleged actions militate in favor of detention.

Second, the weight of the evidence against Goodwin suggests he should be detained. The Sixth Circuit has clarified that § 3142(g)(2) "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (citation omitted). The evidence of Goowdin's dangerousness weighs heavily against pretrial release. Not only is there evidence that he knowingly engaged in sexual acts with a fifteen-year-

---

[1] The Assistant United States Attorney said that he "believe[d] that [Goodwin had] met the threshold burden to get past the initial presumption in order to argue that Mr. Goodwin should, in fact, be released."

5

old girl, that same girl was found at his home—more than 100 miles from her home in Louisville—four days after she was reported missing. Jane Doe also told police that Goodwin gave Crystal Bradshaw $700 after Bradshaw brought Jane Doe to Goodwin's hotel room. And the Court notes that two relatives of Goodwin's have since alleged that he molested them. Indeed, if he were released, Goodwin would stay with his mother and brother in a home that is only ten miles away from where those relatives live. The proximity of his mother's home to those relatives severely undermines the Court's confidence that Goodwin could be released with any reasonable assurance of safety. The evidence presented at the detention hearing indicates Goodwin is dangerous and should not be released.

Finally, the fourth factor—the nature and seriousness of the danger to any person or the community if Goodwin is released—also weighs in favor of detention. The danger that he will sexually prey on minor victims cautions against release and against the specific plan Goodwin has proposed. Goodwin asks to be released to a home in Evansville, Indiana just ten miles away from minors who have accused him of sexual molestation. He proposes to live there with his elderly mother and a brother who leaves the home for work. Though the Court does not question the earnestness of their intentions, it does doubt the ability of Goodwin's mother and brother to serve as satisfactory custodians. Given these three factors, the Court cannot release Goodwin before he stands trial.

The third factor, Goodwin's history and characteristics, is the only factor that supports his release. Goodwin presented evidence that he suffers from several physical ailments. He has resided at his home in Tennessee for thirteen years, and—excluding his time in the military—it appears that he has spent most of his life in Indiana, Kentucky, and Tennessee. He has no

criminal history and received an honorable discharge from the Army. But this one factor does not allay the concerns raised by the other three.

## IV. CONCLUSION

The presumption is that Ralph W. Goodwin should be detained. At the detention hearing, the United States proved clearly and convincingly that Goodwin should be detained. The Magistrate Judge appropriately determined that Goodwin should be detained. And Goodwin's motion raised no new facts that indicate he should be released. Accordingly, it is hereby

**ORDERED** that Defendant Ralph W. Goodwin's Motion to Revoke Detention Order (D.N. 21) is **DENIED**. Additionally, his request for evidentiary hearing on the matter is **DENIED** as moot.